UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES F. SMYTHE, I,

Plaintiff,

v.

NATIONAL SECURITY AGENCY, *et al.*,

Defendants.

Civil Action No. 25-2781 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff James F. Smythe, I, seeks records about himself from the National Security Agency. Instead of filing a straightforward action under the Freedom of Information Act or the Privacy Act, however, he has assembled a farrago of claims that are farfetched or implausible. Defendants NSA, Sally Nicholson (Chief of the NSA's FOIA/Privacy Act Division), and John/Jane Doe NSA now move for summary judgment on some counts and for dismissal on others. Smythe never responds substantively to the vast majority of Defendants' arguments. Finding for the Government, the Court will grant Defendants' Motion in its entirety.

## I.    Background

On June 9, 2025, Smythe submitted a FOIA and a Privacy Act request seeking "all records, documents, electronic data, communications, memoranda, and investigative or administrative materials maintained or generated by [the NSA] pertaining to or referencing [him]." ECF No. 14-2 (Defendants' Statement of Undisputed Material Facts), ¶ 1. The NSA then issued a Glomar response stating that it could neither confirm nor deny the existence of such records. Id., ¶ 2; ECF No. 1 (Compl.), ¶ 10; see also Bartko v. U.S. Dep't of Just., 898 F.3d 51,

1

63 (D.C. Cir. 2018) (permitting government to neither confirm nor deny existence of records). Plaintiff filed an appeal, which the NSA denied.  See Def. SUMF, ¶¶ 3–4; Compl., ¶¶ 11–12. The agency explained that confirming or denying the existence of records about Smythe would require the agency to do the same for other requesters, which would present national-security risks.  See Def. SUMF, ¶ 6.

After some additional correspondence, see Compl., ¶¶ 13–14, Plaintiff filed the Complaint in the present case on August 15.  It names the NSA, Nicholson, and John/Jane Doe NSA Personnel as defendants and pleads a medley of counts.  Id., ¶¶ 6–8.  Counts I and II bring FOIA and Privacy Act claims against the NSA for its allegedly inadequate Glomar response.  Id., ¶¶ 16–17.  Count III accuses the agency of arbitrary, capricious, and unlawful action in violation of the Administrative Procedure Act.  Id., ¶ 18.  Counts IV and V allege that the NSA ran afoul of the Americans with Disabilities Act and the Rehabilitation Act by overlooking Plaintiff's disability and neglecting to provide reasonable accommodations.  Id., ¶¶ 19–20.  Then, breaking with this pattern of claims against the agency, Count VI is a Bivens action against Nicholson for alleged violations of the First, Fourth, and Fifth Amendments.  Id., ¶ 21.  Count VII charges both Nicholson and the NSA with willfully depriving Plaintiff of his rights and thereby violating federal criminal statutes 18 U.S.C. §§ 241–42.  Id., ¶ 22.  Count VIII names Nicholson and John/Jane Doe NSA Personnel for allegedly violating the Foreign Intelligence Surveillance Act by "intentionally subject[ing] Plaintiff to unlawful electronic surveillance."  Id., ¶ 23.  Finally, Plaintiff declares that Defendants intercepted his wire/electronic communications and accessed his stored communications "without authorization."  Id., ¶ 24.  Count IX accordingly brings Wiretap Act and Stored Communications Act claims against Nicholson and John/Jane Doe NSA Personnel, as well as against the United States "to the extent required by statute."  Id.

Defendants now move for summary judgment on Counts I and II and dismissal on Counts III–IX. See ECF No. 14-1 (Memo.).

## II.    Legal Standard

### A.    Summary Judgment in FOIA Cases

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by

3

evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

B.       Rule 12(b)(1) and Rule 12(b)(6)

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quotation marks and citation omitted) (alterations in original). In policing its jurisdictional borders, the court treats the complaint's factual allegations as true and grants the plaintiff the benefit of all reasonable inferences. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

4

Rule 12(b)(6), conversely, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." In evaluating a motion to dismiss under that Rule, the court must "treat the complaint's factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). A court need not accept as true, however, "a legal conclusion couched as a factual allegation." Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56. Where the action is brought by a *pro se* plaintiff, the court must construe his filings liberally and hold the complaint to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Schnitzler v. United States, 761 F.3d 33, 38 (D.C. Cir. 2014).

## III.    Analysis

At the outset, the Court notes that Plaintiff has not responded to the vast majority of Defendants' arguments in their Motion to Dismiss and for Summary Judgment. Smythe instead complains that he "cannot fairly and or properly respond to Defendant's April 20, 2026 Motions . . . without Judge Boasberg FIRST responding to" several of Plaintiff's filings. See ECF No. 16 (Resp.) at 2. As this Court's April 22, 2026, Order made clear, however, "failure to

respond to Defendants' Motions in this case carries with it the risk that judgment will be entered for Defendants."  ECF No. 15 (April 22 Order) at 3; see also LCvR 7(b); Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) ("[A]ny factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion.") (quoting Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982)).

Smythe then outlines several "provisionary, preliminary, and or placeholder arguments." Resp. at 3.  First, he contends that "the Docket Record . . . does contain ample . . . evidence showing [Defendants'] affidavits are frivolous and or clearly baseless," and that "this Court is unduly and unjustly withholding critical and necessary information from Mr. Smythe."  Id. at 3–4 (emphasis omitted).  Smythe then proclaims that "Defendant's motions are so convoluted, inconsistent, opaque, and contradictory that it is not even clear to Mr. Smythe what Defendant's true and correct argument(s) is/are."  Id. at 4.  Finally, he writes that the Motions are "self-evidently self-defeating" and purports to offer three "examples" of their self-defeating nature. Id. at 4–7.

Most of these points are asserted with little supporting evidence or explanation.  More importantly, none fully responds to Defendants' legal arguments for why each count of the Complaint should be dismissed or resolved on summary judgment in Defendants' favor.  As Smythe is *pro se*, the Court will nonetheless proceed through the counts in turn.

A.    Counts I and II: FOIA and Privacy Act

The Complaint's first two counts stem from Plaintiff's dissatisfaction with the NSA's response to his FOIA and Privacy Act request.  He accuses the agency of "willful[ly] refusing to lawfully process" his request and insists that the NSA's Glomar response was inadequate

because it was not accompanied by "a supporting affidavit, a foreseeable-harm showing," "engagement with controlling authorities," and a "segregability analysis or Vaughn index." Compl., ¶¶ 1, 16.

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id., § 552(a)(4)(B); Reps. Comm., 489 U.S. at 754–55. "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

In some cases, however, simply acknowledging the existence of responsive records would itself "cause harm cognizable under [a] FOIA exception." Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting Gardels v. CIA, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). In such instances, an agency can issue a Glomar response, refusing to confirm or deny its possession of responsive documents. Bartko, 898 F.3d at 62–63. "The question in [such a] case is whether disclosing even the existence or nonexistence of the requested records is itself information protected by" the relevant exemption. Id. at 64 (cleaned up); see also People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Hum. Servs., 745 F.3d 535, 540 (D.C. Cir. 2014) ("[T]o the extent the circumstances justify a Glomar response, the agency need not conduct any search for responsive documents . . . .").

7

Here, the NSA maintains that its Glomar response was proper under FOIA Exemptions 1 and 3 and Privacy Act Exemption k(1). See Memo. at 9–17. The agency also argues that it conducted an adequate search for any non-exempt documents responsive to Smythe's request, which further entitles it to summary judgment. See id. at 17–19.

The Court begins its analysis with FOIA Exemption 1, which protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Courts analyze the propriety of Glomar invocations under Exemption 1 for both their "substantive" propriety (prong (A)) and their "procedural" propriety (prong (B)). See Project for Priv. & Surveillance Accountability, Inc. v. U.S. Dep't of Just., 143 F.4th 506, 512 (D.C. Cir. 2025).

Here, the NSA meets the substantive criteria for classification set by Executive Order 13,526, which governs the classification at issue here. See Def. SUMF, ¶ 7; ECF No. 14-3 (Joy Garrett Decl.), ¶ 6. The Order allows information to be classified if "unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," and the agency "identif[ies] or describe[s] the damage." Exec. Order No. 13,526, 75 Fed. Reg. 707, § 1.1(a)(4); see also Judicial Watch, Inc. v. U.S. Dep't of Defense, 715 F.3d 937, 941 (D.C. Cir. 2013).

The NSA's declarant is an "original classification authority at the top secret level," and she has "affirmed after careful consideration that the fact of [requested] records' existence or nonexistence is a classified fact." Memo. at 12; see also Garrett Decl., ¶¶ 1–3 (describing declarant's role); Def. SUMF, ¶ 8 (same). As the declarant explains, "[I]nformation revealing whether NSA has or has not been engaged in collecting intelligence on a specific individual that

NSA has not publicly acknowledged collection on, is currently and properly classified."  Garrett

Decl., ¶ 33; see also Def. SUMF, ¶ 9 ("Ms. Garrett explains the harm to national security that

could ensue if this information were disclosed.").  If the NSA confirmed having no intelligence

interest in one person but refused to comment on another, adversaries could, over time, piece

together which individuals and communication channels remain free from surveillance.  See

Memo. at 12; see also Garrett Decl., ¶ 10 ("Public disclosure of either the capability to collect

specific signals or the substance of the [signals-intelligence] information itself can easily alert

foreign adversaries to the vulnerability of their signals."); Def. SUMF, ¶ 9; Jud. Watch, Inc. v.

U.S. Dep't of Just., 821 F. Supp. 3d 20, 29 (D.D.C. 2026) ("[W]hen courts analyze such requests,

they consider what rule a case would establish, assess what it would let future plaintiffs get their

hands on, and judge the consequences of those disclosures in general.").

Because national security is a "uniquely executive purview," courts "have expressly

recognized the propriety of deference to the executive in the context of FOIA claims which

implicate national security."  Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just., 331 F.3d 918, 926–27

(D.C. Cir. 2003); see also Ray v. Turner, 587 F.2d 1187, 1193 (D.C. Cir. 1978) (explaining that

Executive Branch has "unique insights into what adverse effects might occur as a result of public

disclosure of a particular classified record"); Larson, 565 F.3d at 865 ("Today we reaffirm our

deferential posture in FOIA cases regarding the 'uniquely executive purview' of national

security.") (citation omitted).

Courts have accordingly "deferred to executive affidavits predicting harm to the national

security, and have found it unwise to undertake searching judicial review."  Ctr. for Nat. Sec.

Stud., 331 F.3d at 927; see also ACLU v. U.S. Dep't of Just., 265 F. Supp. 2d 20, 27 (D.D.C.

2003) (stating that "in the national security context, the reviewing court must give substantial

weight" to "affidavits describing the material withheld and the reasons that it fits within one or more of the exemptions") (internal quotation marks and citation omitted).  Moreover, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm."  Wolf, 473 F.3d at 374 (alteration in original) (internal quotation marks and citation omitted).

Given the "substantial weight" that courts give to "detailed agency explanations in the national security context," the Court concludes that the declarant's affidavit supports invoking Exemption 1 for all documents that Plaintiff seeks.  King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987).  Because Exemption 1 independently justifies the agency's Glomar response, the Court needs not consider whether Exemption 3 does, too.  Larson, 565 F.3d at 862–63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other.").  Exemption 1 also defeats Plaintiff's Privacy Act claim, as the Act does not entitle Plaintiff to any greater access to information already protected by that exemption.  See 5 U.S.C. § 552a(k)(1); see also Snyder v. CIA, 230 F. Supp. 2d 17, 21 (D.D.C. 2002).  In sum, Defendants are entitled to judgment as a matter of law on Smythe's FOIA and Privacy Act counts.

### B.    Count III: APA

Plaintiff also asserts an APA claim alleging that the NSA's determinations in response to his FOIA and Privacy Act request were "arbitrary, capricious, and contrary to law."  Compl., ¶ 18.  Defendants respond that the Court lacks jurisdiction over this claim because alternative avenues of relief are available through FOIA and the Privacy Act.  See Memo. at 19–22.  Although the D.C. Circuit holds that this argument raises a 12(b)(6) deficiency and not a

10

jurisdictional one, the result is the same: Count III cannot proceed.  See Oryzsak v. Sullivan, 576 F.3d 522, 525–26, 525 n.2 (D.C. Cir. 2009) (APA's §§ 701–706 reviewability provisions go to APA cause of action and not court's jurisdiction).

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Here, however, other adequate remedies exist: "[T]he Privacy Act and FOIA provide for review of an agency's allegedly unlawful conduct that is no different from district-court review in an APA case."  Haleem v. U.S. Dep't of Def., 2024 WL 230289, at *14 (D.D.C. Jan. 22, 2024); see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just., 846 F.3d 1235, 1245 (D.C. Cir. 2017) ("[W]e have little doubt that FOIA offers an 'adequate remedy' within the meaning of [APA] section 704 . . . .").  Plaintiff indeed brings claims under those Acts in this very lawsuit, and the Court discerns no material difference between the relief sought under this count and what Plaintiff seeks under the FOIA and Privacy Act counts.  See Compl., ¶¶ 16–18; cf. Citizens for Resp. & Ethics in Washington, 846 F.3d at 1246 (no "yawning gap" between public-release remedy sought under APA and individual-access remedy available under FOIA); Haleem, 2024 WL 230289, at *14 (same in FOIA and Privacy Act context despite additional declaratory relief sought).  Count III will therefore be dismissed for failure to state a claim under the APA.

C.    Counts IV and V: ADA and Rehabilitation Act

Plaintiff next alleges that the NSA violated the Rehabilitation Act and the ADA — related disability-discrimination statutes — by refusing him access to the materials he sought via FOIA.  See Compl., ¶¶ 19–20.

Defendants move to dismiss the Rehabilitation Act count for failure to state a claim.  See Memo. at 23–25.  "To prove a violation of section 504 [of the Rehabilitation Act], the plaintiff[]

11

must show that (1) [he is] disabled within the meaning of the Rehabilitation Act, (2) [he is] otherwise qualified, (3) [he was] excluded from, denied the benefit of, or subject to discrimination under a program or activity, and (4) the program or activity is carried out by a federal executive agency or with federal funds." Am. Council of the Blind v. Paulson, 525 F.3d 1256, 1266 (D.C. Cir. 2008).

Smythe never adequately checks the all-important disability box. The Act defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102; see Nurriddin v. Bolden, 818 F.3d 751, 756 n.3 (D.C. Cir. 2016) ("The Rehabilitation Act incorporates the definition of 'disability' from the Americans with Disabilities Act."). "It is," of course, "the plaintiff's burden to prove that he is disabled." Haynes v. Williams, 392 F.3d 478, 482 (D.C. Cir. 2004). Smythe, however, has identified neither his alleged disability nor its limitation on any major life activities. See Compl., ¶¶ 1, 5, 19–20; see also Carter v. Carson, 241 F. Supp. 3d 191, 196–97 (D.D.C. 2017) (failure to state Rehabilitation Act claim where plaintiff did not specify any major life activity affected by asthma, high blood pressure, and other ailments). Because the pleading standard demands more than "labels and conclusions," Twombly, 550 U.S. at 555, Plaintiff has not stated a claim under the Rehabilitation Act.

Next, given that the ADA relies on the same definition of "disability" as the Rehabilitation Act, Defendants argue that Plaintiff's ADA count is doomed for the same reason. See Memo. at 23; see also Wall v. District of Columbia, 2025 WL 958233, at *4 (D.D.C. Mar. 31, 2025) (dismissing ADA retaliation and interference claims where no disability shown within § 12102 definition). Before the Court can reach even that ADA prerequisite, as Defendants

12

correctly surface, the ADA does not apply to federal agencies.  See Memo. at 22–23; Sattler v. U.S. Dep't of Just., 2020 WL 3064422, at *1 (D.D.C. June 8, 2020); see also Smith v. Pallman, 420 F.App'x. 208, 214 (3rd Cir. 2011); Dyrek v. Garvey, 334 F.3d 590, 597 n.3 (7th Cir. 2003).

Although courts, including in this district, do not agree as to whether the inapplicability of the ADA to federal defendants is properly considered under Rule 12(b)(1) or 12(b)(6), Smythe's ADA claim falls either way.  Compare, e.g., Sattler, 2020 WL 3064422, at *1 (considered under 12(b)(1)), Emrit v. Nat'l Insts. of Health, 157 F. Supp. 3d 52, 56 n.3 (D.D.C. 2016) (same); Brode v. FAA, 2020 WL 4004823, at *4 (C.D. Cal. 2020) (same), with, e.g., Klute v. Shinseki, 797 F. Supp. 2d 12, 17 (D.D.C. 2011) (considered under 12(b)(6)), Kramer v. Bessent, 2025 WL 2576482, at *9 (E.D.N.Y. Sept. 4, 2025) (same).

Both of Plaintiff's disability-related counts, therefore, will be dismissed.

D.    Count VI: Bivens Claim Against Nicholson

Smythe also details a Bivens claim against Nicholson, asserting that she violated the First, Fourth, and Fifth Amendments.  See Compl., ¶ 21.  Specifically, he alleges that she "refused to process Plaintiff's petitions for redress, denied any opportunity for oversight into surveillance-related records, and deprived [him] of due process."  Id.  Defendants offer several reasons to dismiss this Bivens claim, arguing that the Court lacks personal jurisdiction over Nicholson because she was not properly served, see Memo. at 8–9, and, alternatively, that Smythe has not pled a valid Bivens claim and that qualified immunity would shield Nicholson even if he had.  Id. at 25–30, 35–37.

"Ordinarily, determining jurisdiction is a federal court's first order of business."  Forras v. Rauf, 812 F.3d 1102, 1105 (D.C. Cir. 2016).  Here, however, the Court dispenses with the Bivens claim on 12(b)(6) grounds.  While Federal Rules of Civil Procedure 4(m) and 12(b)(5)

13

allow the court to dismiss without prejudice claims against a defendant who has not been properly served, "this Circuit has held that allowing a plaintiff to file another suit containing the same meritless claims would be inconsistent with the district court's duties" where there are reasons for dismissing under Rule 12(b)(6). Anderson v. Gates, 20 F. Supp. 3d 114, 123 (D.D.C. 2013), aff'd sub nom. Anderson v. Carter, 802 F.3d 4 (D.C. Cir. 2015).

Courts assess the validity of claims brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), using a two-part test. Egbert v. Boule, 596 U.S. 482, 492 (2022). First, does "the case present a new Bivens context — i.e., is it meaningfully different from the three cases in which the Court has implied a damages action"? Id. at 492 (cleaned up). If so, are there any "special factors counseling hesitation" about judicially creating a remedy that Congress has chosen not to? Bivens, 403 U.S. at 396.

As to the first question, Plaintiff seeks to extend Bivens to a very new context indeed — a denial of a FOIA/Privacy Act request, which he asserts (with little explanation) violated the First, Fourth, and Fifth Amendments. See Compl., ¶¶ 9–15, 21. Unfortunately for Smythe, the Supreme Court has "never held that Bivens extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012); see Boule, 596 U.S. at 499 (such extension risks "substantial social costs") (quotation marks removed). And while Bivens claims have been recognized under the Fourth and Fifth Amendments, a "claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." Hernandez v. Mesa, 589 U.S. 93, 103 (2020); compare Bivens, 403 U.S. at 389 (recognizing cause of action for excessive force in violation of Fourth Amendment), with Boule, 596 U.S. at 490, 494 (purported violation of same right still presented new context).

Plaintiff's claims bear no resemblance to the prior contexts in which the Supreme Court has recognized a Bivens claim. In Bivens itself, officers allegedly entered the plaintiff's apartment, searched it extensively, and arrested him — all without a warrant. See 403 U.S. at 389. The Court also blessed a Fifth Amendment Bivens claim when a congressman blatantly fired an employee because of her gender. Davis v. Passman, 442 U.S. 288, 230 (1979). Here, by contrast, Plaintiff's Fourth Amendment claim is unsupported by any facts suggesting a search or seizure — let alone an unreasonable or warrantless one — and his Fifth Amendment claim does not resemble employment discrimination. See Compl., ¶¶ 9–10, 33–34. The present context is thus undoubtedly a new one.

Turning to question two, reasons "counseling hesitation" to create a new remedy abound in this case. "[A] court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" Boule, 596 U.S. at 493 (quoting Ziglar v. Abbasi, 582 U.S. 120, 137 (2017)). "That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." Id. at 498 (quotation marks omitted). Here, an alternative remedial structure exists in the Privacy Act and FOIA. Wilson v. Libby, 535 F.3d 697, 706-07 (D.C. Cir. 2008) (explaining that Privacy Act is comprehensive remedial scheme and is therefore "a special factor that counsels hesitation in implying Bivens remedies") (cleaned up); Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 777 (D.C. Cir. 2002) ("FOIA embodies the type of statutory scheme that precludes courts from fashioning damage remedies under Bivens."). Indeed, as noted above, Plaintiff brings claims under those Acts in this very lawsuit.

The Court, therefore, declines to recognize a Bivens claim here, dismissing the First, Fourth, and Fifth Amendment claims against Nicholson under Rule 12(b)(6).

15

E.        Count VII: 18 U.S.C. §§ 241–242

Smythe also alleges a count under 18 U.S.C. §§ 241–242 against the NSA and Nicholson for "willful, bad-faith deprivation of rights." Compl., ¶ 22. As Defendants correctly note, however, these federal criminal statutes provide no private cause of action. See Memo. at 30; Crosby v. Catret, 308 F. App'x 453, 453 (D.C. Cir. 2009) ("[T]here is no private right of action under [§§ 241 and 242]."); Davis v. Sarles, 134 F. Supp. 3d 223, 228 (D.D.C. 2015). The Court therefore dismisses this count.

F.        Count VIII: FISA Claim Against Nicholson and John/Jane Doe NSA Personnel

Next, Smythe sues Nicholson and John/Jane Doe NSA Personnel for allegedly violating FISA by "intentionally subject[ing] Plaintiff to unlawful electronic surveillance." Compl., ¶ 23. Defendants ask the Court to dismiss this count for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim. See Memo. at 33–35.

FISA states that "[a]ny action against the United States under this section may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act." 18 U.S.C. § 2712(b)(1); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Administrative exhaustion under the FTCA, in turn, requires that a claimant present to the relevant agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." GAF Corp. v. United States, 818 F.2d 901, 905 (D.C. Cir. 1987); see 28 U.S.C. § 2675.

Smythe took none of those steps; rather, he raises his FISA claim for the first time before this Court. In Goziker v. U.S. Department of Justice, 2025 WL 2220025 (D.D.C. Aug. 5, 2025),

16

the plaintiff had filed a written complaint with the relevant agency alleging that its subsidiary had surveilled him, but the court nonetheless found that he had not properly activated the administrative process because that administrative submission did not "specify the precise nature of the alleged injury" the plaintiff had suffered. Id. at *6. Here, Defendants note that "Smythe makes a passing reference to FISA in his FOIA appeal," Memo. at 34, but that is not the same as submitting a claim to the NSA, let alone an adequate one.

The Supreme Court recently cast doubt on longstanding precedent in this Circuit that "failure to exhaust administrative remedies [is] jurisdictional" in the FTCA context. Rasul v. Myers, 512 F.3d 644, 661 (D.C. Cir. 2008), vacated on other grounds, 555 U.S. 1083 (2008); compare Santos-Zacaria v. Garland, 598 U.S. 411, 417 (2023) ("exhaustion is typically nonjurisdictional"), with Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (affirming dismissal under 12(b)(1) because administrative exhaustion is jurisdictional), and Simpkins v. D.C. Gov't, 108 F.3d 366, 370–72 (D.C. Cir. 1997) (remanding for dismissal under 12(b)(1) rather than 12(b)(6) for same reason).

The Court need not, however, resolve the question of Santos-Zacaria's implications for the jurisdictional status of the FTCA's administrative-exhaustion requirement because the answer is not dispositive in this case. If Smythe's inattention to that requirement is jurisdictional, the Court must dismiss Count IX under 12(b)(1); if not, it would do the same under 12(b)(6). Cf. ECC Int'l Constructors, LLC v. Sec'y of the Army, 79 F.4th 1364, 1380 (failure to comply with statutory sum-certain requirement warrants 12(b)(6) dismissal).

G.    Count IX: Wiretap Act and Stored Communications Act

Finally, Smythe alleges that "Defendants intentionally intercepted, disclosed, or used the contents of Plaintiff's wire/electronic communications and/or accessed stored communications

17

without authorization." Compl., ¶ 24. He sues Nicholson and John/Jane Doe NSA personnel for alleged violation of the Stored Communications Act, 18 U.S.C. §§ 2701–2707, 2712 and the Wiretap Act, 18 U.S.C. § 2520. He also alleges a violation of the Stored Communications Act against the United States, "to the extent required by statute." Compl. at ECF p. 10.

        1.     *The Stored Communications Act*

Smythe's 18 U.S.C. § 2712 claim against the United States fails because he has not met the administrative-exhaustion requirement. As explained above, administrative exhaustion requires that a claimant submit a written statement asserting a sum-certain damages claim to the relevant agency. GAF Corp., 818 F.2d at 919; see 28 U.S.C. § 2675(a).

Here, Smythe has not presented these necessary materials to the NSA. He has merely submitted a FOIA request, appealed the denial of that request, and then emailed a "comprehensive rebuttal" to the NSA's denial of the appeal. See Compl., ¶¶ 9–13; see also Def. SUMF, ¶¶ 1–3. But a FOIA appeal is not an FTCA claim. For instance, none of Smythe's communications with the NSA alleged a sum-certain damages claim as the statute requires. See Compl., ¶¶ 9–13; see also ECF No. 14-6 (Pl. Appeal Ltr.). Because Plaintiff does not meet the administrative-exhaustion requirement, the Court will dismiss the 18 U.S.C. § 2712 claim under either 12(b)(1) or 12(b)(6). See supra Section III.F (noting that Court need not resolve jurisdictional status of FTCA's administrative-exhaustion requirement).

As to Nicholson and John/Jane Doe NSA personnel, the Court dismisses Smythe's claims under 18 U.S.C. § 2712 because it provides a cause of action only against the United States. See 18 U.S.C. § 2712(a). In addition, Plaintiff fails to sufficiently plead allegations under 18 U.S.C. § 2707 that survive the 12(b)(6) standard for dismissal. He offers only the bare allegation that "Defendants intentionally intercepted, disclosed, or used the contents of Plaintiff's

wire/electronic communications and/or accessed stored communications without authorization." Compl., ¶ 24. His claim reads more as "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (cleaned up), given that the Complaint does not set forth any specific facts that indicate unlawful behavior by Defendants. See Twombly, 550 U.S. at 555 (Plaintiff's allegations "must be enough to raise a right to relief above the speculative level"). The Court therefore will also dismiss Smythe's claims against Nicholson and John/Jane Doe NSA personnel.

2.      *The Wiretap Act*

Smythe submits similar claims under the Wiretap Act against the NSA and the United States. See Compl., ¶ 24. That law provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). To state a claim, a plaintiff must allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." In re Pharmatrak, Inc., 329 F.3d 9, 18 (1st Cir. 2003). Defendant — unimpressed by Plaintiff's cryptic and conclusory charge that "[o]n information and belief, Defendants intentionally intercepted . . . Plaintiff's wire/electronic communications," Compl., ¶ 24 — seeks dismissal for failure to state a claim. See Memo. at 33.

Defendant is right, but for an even more rudimentary reason. The emphasis added to the statutory language above should have given away the conclusion that plaintiffs may not sue the United States for actions covered by this provision. Because Smythe lacks a cause of action

19

against a U.S. agency for his Wiretap Act claim, this count must depart.  Gilliam v. U.S. Dep't of

Just., 128 F. Supp. 3d 134, 144 (D.D.C. 2015); see also Iqbal, 556 U.S. at 679 ("[O]nly a

complaint that states a plausible claim for relief survives a motion to dismiss.").

The Court's analysis continues, however, because this count also names Nicholson and

John/Jane Doe NSA personnel in their individual capacities.  See Compl., ¶ 24.  Here, the Court

dismisses Plaintiff's Wiretap Act claim against these defendants for the same reason that it

dismissed the § 2707 Stored Communications Act claim: the Complaint does not set forth any

specific facts to support the vague allegation that "Defendants intentionally intercepted,

disclosed, or used the contents of Plaintiff's wire/electronic communications and/or accessed

stored communications without authorization."  Compl., ¶ 24.  The Court thus disposes of this

count, too.

## IV.    Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss Counts III–IX and

for Summary Judgment on Counts I and II.  A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 27, 2026

20